**In re Michael ROSENZWEIG, Debtor.**

**Bankruptcy No. 97 B 38192.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Feb. 29, 2000.

David E. Cohen, Ferleger & Cohen, Ltd., Chicago, IL, for Movant/Trustee.

Adam B. Goodman, Jessica Tovrov, Peterson & Ross, Chicago, IL, for Debtor.

David E. Grochocinski, Grochocinski & Grochocinski, Orland Park, IL, Trustee.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the motion for turnover of assets filed by David E. Grochocinski as Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Michael Rosenzweig (the "Debtor") and the objection thereto filed by the Debtor. After review of the pleadings and arguments of the parties, the Court denies the Trustee's motion.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (E).

### II. FACTS AND BACKGROUND

Some of the facts and background have been discussed in prior Opinions of the Court wherein objections to the Debtor's discharge were sustained. *See A.V. Reilly Int'l, Ltd. v. Rosenzweig (In re Rosenzweig)*, 237 B.R. 453 (Bankr.N.D.Ill.1999) and 239 B.R. 905 (Bankr.N.D.Ill.1999). The following facts are pertinent to this matter. The Debtor filed a Chapter 13 petition and schedules on December 12, 1997. On his Schedule C (Property Claimed as Exempt) the Debtor listed "Any Tax Refund" and listed "100%" instead of listing a value of the claimed exemption and current market value. No tax refund was listed on the Debtor's Schedule B (Personal Property) or on any amended Schedule B. This is the genesis of

the motion at bar and the principal ground on which the Trustee relies for the relief sought.

After denial of confirmation of his Chapter 13 plan, on April 30, 1998 the Debtor converted his case to a case under Chapter 7 of the Bankruptcy Code. On June 29, 1998, the Debtor filed an Amended Schedule C, which listed an exemption for "Any Tax Refund," pursuant to 735 ILCS 5/12–1001. The claimed market value and value of exemption listed was $2,946.00, this value representing half of the $5,893.00 tax refund received by the Debtor and his non-debtor wife. According to the Trustee, this amended Schedule C was sent only to the Trustee and the attorney for one of the creditors, A.V. Reilly International, Inc. The § 341 meeting of creditors in the superceding Chapter 7 case was held on June 30, 1998.

During trial on the objection to the Debtor's discharge held on July 22, 1999, the Debtor testified that between April and June of 1998 he received a tax refund of over $5,000.00. In dictum the Court noted that: "The Debtor cannot properly claim an asset exempt on Schedule C if he has not listed it as an asset on his Schedules A or B." *Rosenzweig*, 239 B.R. at 909. Based on the Debtor's testimony and his 1997 1040 United States Individual Income Tax Return, on November 9, 1999 the Trustee filed the pending motion, in which he seeks turnover of the $5,893.00 that the Debtor and his non-debtor spouse received as a tax refund. Subsequently, the Debtor filed his objection and amended objection to the motion.

The Trustee contends that, because the Debtor did not list the tax refund on his Schedule B, he cannot properly claim it as exempt on his Schedule C and that the funds must be turned over to the Trustee. He further argues, in the alternative, that this Court should use its authority under 11 U.S.C. § 105(a) to deny the Debtor's exemption to prevent abuse of process.

The Debtor responds that he disclosed the tax refund on his Schedule C, and that, in any event, it is too late for the Trustee to object to his claimed exemption because the statutory period for doing so has expired under 11 U.S.C. § 522(*l*) and Fed. R.Bankr.P. 4003(b) and controlling case law.

### III. APPLICABLE STANDARDS FOR CONTESTED CLAIMS OF EXEMPTION UNDER BANKRUPTCY AND ILLINOIS LAW

■■■ Under the Bankruptcy Code, either the applicable state or the federal exemptions may be selected pursuant to 11 U.S.C. § 522 unless a state chooses to "opt out" of the federal exemption scheme. *See* 11 U.S.C. § 522(b)(1). The Illinois General Assembly "opted out" by enacting 735 ILCS 5/12–1201. Hence, Illinois debtors are required to use the exemptions provided by Illinois Law. *In re Ball,* 201 B.R. 204, 206 (Bankr.N.D.Ill.1996). Illinois exemption statutes are to be liberally interpreted in favor of the debtor. *In re Barker,* 768 F.2d 191, 196 (7th Cir.1985). If it is possible to construe an exemption statute in ways that are both favorable and unfavorable to a debtor, the favorable method should be chosen. *Id.; In re Dealey,* 204 B.R. 17, 18 (Bankr.C.D.Ill.1997). The purpose of the exemption provision is to protect a debtor's fresh start in bankruptcy. *In re Wright,* 156 B.R. 549, 554 (Bankr.N.D.Ill.1992).

Federal Rule of Bankruptcy Procedure 4003 governs hearings on disputed claims of exemption and objections thereto. Section 522(*l*) of the Bankruptcy Code and Rule 4003(a) require debtors to list the property claimed as exempt on the schedule of assets they are required to file. The rule provides that:

A debtor shall list the property claimed as exempt under § 522 ... on the schedule of assets required to be filed by Rule 1007. If the debtor fails to claim exemptions *or* file the schedules within the time specified ... a dependent of the debtor may file the list within 30 days thereafter.

Fed. R. Bankr.P. 4003(a) (emphasis supplied).

■■■ Critical to the Debtor's defense and objection to the motion is the last sentence of § 522(*l*) which states: "Unless a party in interest objects, the property claimed as exempt on such list is exempt." 11 U.S.C. § 522(*l*). *See also Taylor v. Freeland & Kronz,* 503 U.S. 638, 642, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). Rule 4003(b) affords the trustee and creditors 30 days after the conclusion of the § 341 meeting of creditors to object to the exemptions claimed. The United States Supreme Court has held that § 522(*l*) and the Rule 4003 time limits bar contesting the validity of an exemption after the 30–day period for objecting has expired where the court has not granted an extension, even though a valid objection could have been made had the party acted promptly. *Taylor,* 503 U.S. at 642–44, 112 S.Ct. 1644. *See also In re Salzer,* 52 F.3d 708 (7th Cir.1995), *cert. denied,* 516 U.S. 1177, 116 S.Ct. 1273, 134 L.Ed.2d 219 (1996) (failure to object within the 30 days provided by Rule 4003(b) waives the right to object); *In re Kazi,* 985 F.2d 318, 320 (7th Cir. 1993). The Court is obliged to follow these clear holdings and apply same here, notwithstanding the Debtor's failure to properly schedule the tax refund on his Schedule B.

### IV. STANDARDS FOR TURNOVER OF PROPERTY OF THE ESTATE

■■■ The Bankruptcy Code statutory provision for turnover contained in 11 U.S.C. § 542(a) deals with property of the estate to be turned over to the case trustee with the exceptions provided in § 542(c) and (d) and subject to the set-off rights referenced in § 542(b) pursuant to 11 U.S.C. § 553. Thus, turnover is not intended as a remedy to determine the disputed rights of parties to property; rather it is intended as the remedy to obtain what

is acknowledged to be property of the bankruptcy estate. *Marlow v. Oakland Gin Co., Inc. (In re The Julien Co.)*, 128 B.R. 987, 993 (Bankr.W.D.Tenn.1991) (citations omitted), *aff'd*, 44 F.3d 426 (6th Cir. 1995).

Relief under § 542(a) is most frequently afforded to case trustees or debtors against creditors who are in actual or constructive possession of the subject collateral at the time the bankruptcy petition is filed, and who do not voluntarily surrender it. *See Pileckas v. Marcucio*, 156 B.R. 721, 725 (N.D.N.Y.1993). Hence, the burden is usually on the trustee or debtor seeking turnover, *Groupe v. Hill (In re Hill)*, 156 B.R. 998, 1006 (Bankr.N.D.Ill. 1993), and the evidence must show that the asset in question is part of the bankruptcy estate. *Mather v. Tailored Fabrics, Inc. (In re Himes)*, 179 B.R. 279, 282 (Bankr. E.D.Okla.1988) (citation omitted). Only property in which the debtor has an interest that properly becomes part of the bankruptcy estate can be made the subject of an order for turnover under § 542(a). *Cates–Harman v. Stage (In re Stage)*, 85 B.R. 880, 881 (Bankr.M.D.Fla.1988) (citation omitted). It follows that if the debtor does not have the right to possess or use the property at the commencement of a case, a turnover action cannot be used to acquire such rights. *Creative Data Forms, Inc. v. Penn Minority Bus. Dev. Auth. (In re Creative Data Forms, Inc.)*, 41 B.R. 334, 336 (Bankr.E.D.Pa.1984), *aff'd*, 72 B.R. 619 (E.D.Pa.1985), *aff'd*, 800 F.2d 1132 (3d Cir.1986).

## V. *DISCUSSION*

### A. *The Claimed Exemption and the Untimely Objection*

The period here for objecting to claimed exemptions expired on July 30, 1998, and the Trustee did not file the current objection until November 9, 1999. The Court concludes that the Trustee did not timely object to the Debtor's claimed exemption in the property, nor did the Trustee re-quest or the Court grant an extension to the 30-day exemption period. Thus, under the Code, Rule 4003(b) and the *Taylor, Salzer* and *Kazi* cases, the Trustee cannot now timely object to the Debtor's claim of exemption, whether or not the Debtor had a colorable statutory basis for claiming it. *See Taylor*, 503 U.S. at 644, 112 S.Ct. 1644. However, in light of the above dicta from the Court's prior Opinion, this Court will address the issue of the adequacy of the Debtor's disclosure of the tax refund on his schedules.

A debtor claims exemptions by designating property as exempt on Schedule C of the Schedule of Assets and Liabilities. Normally such exempt property must also be listed separately on either the Schedule A or B with sufficient detail to put the trustee and interested parties on notice of questionable claims of exemption. *In re Doyle*, 209 B.R. 897, 901 (Bankr.N.D.Ill. 1997) (citation omitted). *See also Payne v. Wood*, 775 F.2d 202, 206 (7th Cir.1985), *cert. denied*, 475 U.S. 1085, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986); *In re Wright*, 99 B.R. 339, 341–42 (Bankr.N.D.Tex.1989) (it is incumbent on a debtor to specifically value each item claimed as exempt with particularity); *In re Wenande*, 107 B.R. 770, 772 (Bankr.D.Wyo.1989) (debtors' generic categorization of "stocks," "mineral interest," "accounts," "intangibles" and "personal property" did not provide adequate notice of the property claimed exempt). The court in *Payne* further stated regarding the specificity of claims of exempt property:

> It would be silly to require a debtor to itemize every dish and fork, even to list the electric knife separately from the crock pot. The necessary degree of specificity varies with the value of separate listings.... The requirement that the debtor list the property serves at least two functions.... The other is to allow the trustee to decide which claims to challenge. Debtors are not perfectly trustworthy, and unless the claim of exemption contains sufficient detail to put

the trustee on notice of questionable assertions, it will not be possible to administer the statutory scheme. . . . The trustee . . . may ask the bankruptcy court to require the debtor to do more. . . . When the debtor's listing withholds information that the trustee may find helpful, . . . a categorical claim of exemption should not be honored beyond the value the debtor attached to the category. After all, property passes to the estate automatically, and it is the debtor's burden to make out the claim of exemption with adequate specificity.

*Id.* at 205–06 (citation omitted).

■■■ The result of filing inadequate schedules of exempt property is a limitation on the value debtors may receive for exempt assets in those categories. Neither *Taylor*, *Payne* nor *Kazi*, however, held that a debtor must first schedule property on the Schedule A or B as a precondition to properly claiming same exempt on Schedule C. The Court declines the Trustee's invitation to so hold here on these facts.

■■■ Here, the Debtor did not list a tax refund on his Schedule B, but on his original Schedule C, the Debtor claimed as exempt a "tax refund" and, instead of a dollar value, listed "100%." This placed the Trustee and creditors on notice that some tax refund was claimed exempt. After the Debtor filed his income tax return and one day prior to the § 341 meeting of creditors in the Chapter 7 case, the Debtor filed an Amended Schedule C and served same on the Trustee, which listed the tax refund as a claimed exemption, with a specific dollar value of $2,946, which was half of the refund for the subject tax year. It is clear that the Debtor could and should have done a better job of scheduling the tax refund; he could and should have also listed it on his Schedule B, which would have likely precluded the necessity for the matter at bar. He did, however, provide the Trustee a copy of the Amended Schedule C listing the specific amount of the tax refund he was claiming exempt

after he became aware of it and immediately prior to the § 341 meeting of creditors. The Trustee admits that the Amended Schedule C was sent to him, and therefore he had adequate notice that the Debtor was claiming this exemption in time to object thereto within the 30 day period after the conclusion of the meeting of creditors as provided by Rule 4003(b). If the Trustee was concerned about the Amended Schedule, he had ample time to object, request additional time or other relief, or move the Court to order a more specific statement regarding the tax refund well within 30 days of the § 341 meeting's conclusion, not over a year later with the untimely motion at bar. Under the circumstances, although the Debtor's original attorney was not thoroughly familiar with bankruptcy law, this Court finds that the Debtor's Amended Schedule C, taken as a whole, provided adequate notice of his claimed exemptions to the Trustee despite the lack of properly scheduling the refund on an Amended Schedule B.

Finally, with respect to the claimed exemption, the Trustee argues that the Debtor should be ordered to turnover the amount of the tax refund which exceeds the amount he claimed as exempt, based upon the Debtor's failure to provide more specific information about the exemption. This contention, however, ignores the fact that the refund was jointly claimed by the Debtor's spouse as well as the Debtor, and she is not a party to the matter at bar. The Trustee claims that, because the Debtor paid more excess income tax than his non-debtor wife paid, his wife is entitled only to $852.02, or 14% of the refund as her "proportionate share," and that the Debtor should turnover $2,094.98, the difference between his claimed exemption and the amount of the tax refund representing his proportionate share.

The law in this area is unclear and the Seventh Circuit has apparently not definitively ruled on the issue of the relative claims to federal income tax refunds between spouses who file joint returns. The

Eleventh Circuit Court of Appeals has held that, when spouses claim a refund under a joint tax return, the refund will be divided between them, with each spouse receiving a percentage of the refund equivalent to the proportion of tax payments withheld from or paid by him or her. *Gordon v. United States*, 757 F.2d 1157, 1160 (11th Cir.1985) (citations omitted). The District Court for the Northern District of Illinois has cited *Gordon* for that proposition. *Taborski v. IRS*, 141 B.R. 959, 965 (N.D.Ill.1992) (citation omitted).

However, in the domestic relations arena, the Illinois Appellate Court has held that when the right to an income tax refund accrues during marriage, the refund is treated as marital property. *In re Marriage of Ormiston*, 168 Ill.App.3d 1016, 1018, 119 Ill.Dec. 680, 681, 523 N.E.2d 148, 150 (1st Dist.1988) (citations omitted). *See also In re Marriage of Brooks*, 138 Ill. App.3d 252, 262, 93 Ill.Dec. 166, 172, 486 N.E.2d 267, 273 (1st Dist.1985). The fact that only one spouse generated the income upon which the refund is based does not preclude the other spouse from being entitled to a portion or all of the refund. *Ormiston*, 168 Ill.App.3d at 1018, 119 Ill. Dec. at 681, 523 N.E.2d at 150. Illinois' Marriage and Dissolution of Marriage Act defines "marital property" as "all property acquired by either spouse subsequent to the marriage...."[1] 750 ILCS 5/503(a) (West 1999). When a marriage is being dissolved, marital property is divided equitably between the spouses, based upon several factors, including:

(1) the contribution of each party to the acquisition, preservation or increase or decrease in value of the marital or non-marital property, including the contribution of a spouse as a homemaker or to the family unit;

(2) the dissipation by each party of the marital or non-marital property;

(3) the value of the property assigned to each spouse;

(4) the duration of the marriage;

(5) the relevant economic circumstances of each spouse ...

(8) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties....

750 ILCS 5/503(d)(1)-(8).

Inasmuch as the Debtor's spouse was not made a party to this matter as required under Rule 7001(1) and the Court has no subject matter jurisdiction over her claim to her portion of the refund or any in personam jurisdiction over her, the Court must deny any claim of the Trustee to her share of the subject refund, whatever it may be under the above authority.

**B. Denial of Exemption Under 11 U.S.C. § 105(a)**

The Trustee further argues if this Court holds that the Debtor can claim the tax refund as exempt, that this Court should use its authority under 11 U.S.C. § 105 to deny the exemption to prevent abuse of process. In the *Taylor* case, the United States Supreme Court, by declining to address the issue not properly raised before it, left open the possibility that bankruptcy courts could disallow exemptions not claimed in good faith under § 105(a) even when the objection thereto is untimely filed. *See Taylor*, 503 U.S. at 645, 112 S.Ct. 1644. Following this, one bankruptcy court has used its authority under § 105(a) to prevent a debtor from claiming an exemption, *In re Montanez*, 233 B.R. 791 (Bankr.E.D.Mich.1999), although most courts have generally implied a strict interpretation of *Taylor*. *See Hovis v. Wiggins (In re Wiggins)*, 220 B.R. 262, 267–68 (Bankr.D.S.C.1998) (discussing cases from various circuits interpreting *Taylor*).

[1] The statute provides eight exceptions which are known as "non-marital property" and are not relevant here.

In *Montanez*, the trustee timely objected to the debtor's exemption of household goods and wearing apparel with value exceeding the statutory limit set under 11 U.S.C. § 522(d)(3), and the debtor denied that the value exceeded the limit. *Montanez*, 233 B.R. at 792. After the trustee was given opportunity for discovery regarding the exempted property, he went to the debtor's residence which was listed on the schedules, and found that she did not live there then and that she had not lived there at the time of the meeting of creditors. *Id.* Apparently, the debtor had sold the residence for $35,000 after filing her bankruptcy petition, and the trustee asserted he could not find her or her property. *Id.* After the trustee brought this to the court's attention, the court allowed the trustee three days to file amended objections addressing the real property issues. *Id.* The trustee did so, and the debtor responded by asserting that the objection was untimely under *Taylor*. *Id.* In a brief filed by the debtor, she revealed that she had purchased the home in 1993 for $8,000. *Id.* at 793. She then deeded the home to her daughter for $1 in 1994, and her daughter deeded it back to her in 1996, also for $1. *Id.* Finally, according to the brief, on March 23, 1998, the debtor's daughter deeded the property to a third party for $35,000. *Id.* At trial, the debtor presented evidence that her daughter was the original purchaser of the property and, despite deeds in the chain of title indicating the debtor had held record title to the property, the debtor went on to deny that she ever had any interest in the property. *Id.* at 795.

Because the debtor denied any interest in the property, the court held that she could not attempt to claim it as exempt. *Id.* at 795. The court stated, *"In these circumstances*, as a matter of law, the Court concludes that it is improper for a debtor to attempt to exempt the property while at the same time denying and rejecting any interest in that property." *Id.* (emphasis supplied) (citations omitted). Citing the denial of any interest in the

property along with the debtor's abuse of process in attempting to avoid the consequences of the post-petition sale of the residence, the court held that, to prevent such an abuse of process, it would use its authority under § 105(a) to consider an untimely objection to a claimed exemption. *Id.* at 796–98. These facts are markedly different from the case at bar where the Trustee was furnished with timely notice of the Debtor's claim of exemption to the subject income tax refund.

In most cases, including ones from the Seventh Circuit Court of Appeals, a more strict interpretation of *Taylor* has been used. In *In re Kazi*, the Seventh Circuit held that failure to file a timely objection is an absolute bar to consideration of the merit of claimed exemptions. *Kazi*, 985 F.2d at 320. This is true, the court stated, regardless of whether the debtor's claimed exemption has a basis in law. *Id.* at 322. Additionally, the court held that the filing of an amended schedule by the debtor does not reopen the time to object to the original claimed exemptions. *Id.* at 323. Similarly, in *In re Salzer*, the Seventh Circuit stated that the failure of a trustee or creditor to object to a claimed exemption within the 30 days provided by Rule 4003(b) waives the right to contest the validity of the claimed exemption. *Salzer*, 52 F.3d at 711.

 Here, the Debtor did not deny or conceal his interest in the tax refund, and he certainly did not engage in any real ploy to hide the refund from the Trustee and creditors. The Debtor's failure to properly list the tax refund on his Schedule B is not absolutely fatal to his claim of exemption, because, taken as a whole, his schedules disclosed the existence of the tax refund and did so in time to afford the Trustee time to object within the limits of Rule 4003(b). *See Wiggins*, 220 B.R. at 269. The Debtor could have done a better job of disclosing the tax refund, but he did not attempt to conceal or deny any interest in the refund as the debtor did in *Monta-*

*nez.* Therefore, this Court will not use its authority under § 105(a) to allow an untimely objection here because there has been no intentional abuse of process regarding this exemption. Rather, the matter shows a negligent failure to list the refund on Schedule B at the time the exemption thereto was claimed on Schedule C. The abuse of process noted in the Court's prior Opinions has resulted in the loss of the Debtor's discharge. It is not necessary to compound this result by sustaining the Trustee's untimely objections to the claimed exemption to which the Debtor is entitled under § 522(*l*), *Taylor, Salzer* and *Kazi.*

### VI. *CONCLUSION*

The Trustee's motion for turnover of the tax refund is denied.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.